**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cosme TORRES–MEDINA, Defendant–Appellant.**

**No. 90–50257.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1991.

Decided June 7, 1991.

John Yzurdiaga, Carol Klauschie, Los Angeles, Cal., for defendant-appellant.

Gregory W. Alarcon, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BEEZER, HALL and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Cosme Torres–Medina appeals his conviction for use of a firearm in relation to the commission of a narcotics offense. *See* 18 U.S.C. § 924(c)(1) (1988). He asserts the evidence was insufficient to convict him because he is handicapped and could not access the tunnel below his house where the police found the firearm and drugs. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEEDINGS BELOW

The police raided Torres–Medina's house pursuant to a search warrant. Using a trained dog, they located a trap door that led to a crawl space beneath the house. An officer crept into this space and found scales, a sifter, thirty grams of cocaine, chemicals used for "cutting" the cocaine, and a loaded nine millimeter handgun.

At trial, Officer Jeff Quon testified that the cocaine was possessed for sale based on its close proximity to the drug processing equipment and the fact that it was stored in individual plastic bags. Special Agent Bill Queen testified that the handgun was used to protect the narcotics operation based on its close proximity to the cocaine. Leocadia Arzapalo, Torres–Medina's sister, testified that, when originally questioned by the police, she told them the gun belonged to Torres–Medina. She also related that Torres–Medina is a paraplegic confined to a wheelchair and has difficulty feeding himself. Manuel Estrada, an associate of Torres–Medina's, testified that he had seen Torres–Medina fire a pistol during a New Year's celebration. He also stated that he assisted Torres–Medina during drug deals, because Torres–Medina needed help owing to his lack of physical coordination and strength.

The jury convicted Torres–Medina of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and use of a firearm in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1). Torres–Medina timely appeals.

## ANALYSIS

Torres–Medina contends there was insufficient evidence to convict him of using a firearm in relation to a narcotics offense. We will uphold a conviction if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Orozco–Santillan*, 903 F.2d 1262, 1264 (9th Cir. 1990) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original).

18 U.S.C. § 924(c)(1) states in relevant part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years....

18 U.S.C. § 924(c)(1) (1988).

Section 924(c)(1) contains two elements. The first element requires the government to establish that the firearm at issue was "related to," or played some role in, the underlying crime. *See United States v. Phelps*, 877 F.2d 28, 30 (9th Cir. 1989); *United States v. Stewart*, 779 F.2d

538, 540 (9th Cir.1985). In the present case, the close proximity of the handgun to the drugs strongly suggested that it was "related" to the narcotics operation. *See, e.g., United States v. Hadfield,* 918 F.2d 987, 998 (1st Cir.1990).

■ The second element of section 924(c)(1) is that the defendant must have "used" or "carried" the firearm.[1] The dispute in this case centers around the word "use." We begin by noting that section 924(c)(1) does not require literal "use" of the firearm. It is well established, for instance, that section 924(c)(1) may apply where the gun related to the drug offense was not displayed or brandished. *See United States v. Torres–Rodriguez,* 930 F.2d 1375, 1385 (9th Cir.1991); *United States v. Power,* 881 F.2d 733, 737 (9th Cir.1989); *Stewart,* 779 F.2d at 540; *United States v. Moore,* 580 F.2d 360, 362 (9th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978).

■ At a minimum, however, the firearm must have been "within the possession or control" of the defendant. *Stewart,* 779 F.2d at 540; *Power,* 881 F.2d at 737. We

have not yet elaborated on the meaning of "possession or control" in this context. The case before us calls for a fuller definition of the phrase.[2]

■ The *Stewart* case is our principal guidepost within the circuit. In *Stewart,* the defendant was found to have possessed or controlled the firearm though it was stowed in the trunk of the car in which he was sitting when arrested. *Stewart,* 779 F.2d at 539–40. *Stewart* thus implies, we believe correctly, that the firearm need not be within the defendant's reach during the commission of the crime or at the moment of arrest.[3]

■ Other circuits have held that the firearm must have been accessible or available to the defendant, often using the word "readily" to modify accessible or available. *See, e.g., United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991); *United States v. Acosta–Cazares,* 878 F.2d 945, 952 (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). While we agree that the firearm must be available, we reject the notion that it must be readily available. *Cf. Hadfield,* 918 F.2d at 997 (firearm need not be "immedi-

---

1. In the typical section 924(c)(1) case, the firearm is found nearby the defendant, raising a strong inference that he used or carried it. In that situation, the defendant generally argues that, though he used or carried the gun, he did not do so in relation to the crime. It is a rare case where the relatedness element is conceded, or clearly established, and the use or carry element is nonetheless disputed. The explanation for this, of course, is that once the firearm is found to have played some role in the commission of the offense, the evidence supporting that finding also will tend to show that the defendant used, or intended to use, the gun. *See United States v. Hadfield,* 918 F.2d 987, 998 (1st Cir.1990) ("It is reasonable, we think, if an operable firearm is found in close proximity to a room or rooms in which drug distribution, processing, or storage occurs, for the factfinder to conclude that the defendant knew the gun was there and intended it to be available for use in connection with the predicate offense."). It is perhaps due to this analytical overlap that this circuit has heretofore failed to make a clear distinction between the two elements of section 924(c)(1). In the run of the mill case, that distinction will be of slight importance, however in a case such as the one presented here, the necessity of a twofold inquiry becomes apparent.

2. At several points in its brief, the government urges us to adopt, for purposes of section

924(c)(1) analysis, the constructive possession principles employed in cases involving narcotics possession. Thus, the government contends, because Torres–Medina was convicted of possession of the cocaine, he must necessarily be guilty of the weapons charge as well, because the handgun was located next to the cocaine in the crawl space. The words "uses or carries," however, suggest something different than constructive possession. As we explain later in this opinion, these words speak to the availability or accessibility of the firearm. We are reluctant, therefore, to tie the use or carry analysis of section 924(c)(1) to principles of constructive possession in the narcotics realm. To do so would only invite litigation concerning the interplay between the two subjects.

3. It is important to remember that section 924(c)(1) is not limited in application to the time frame of the arrest. The statute plainly contemplates that firearms may be used to facilitate the commission of crime, just as much as to ward off arrest. Thus, the evidence at trial may show that the defendant used or carried the firearm in relation to the crime, though it was nowhere to be found upon arrest. It is a coincidence without significance that the majority of section 924(c)(1) cases involve the use of a gun discovered at the scene of apprehension.

ately available in order to facilitate drug deals."). As we explain, such a restrictive reading of section 924(c)(1) is inconsistent with our prior opinions interpreting that provision.

■ In the course of interpreting the phrase "in relation to" in *Stewart*, then Judge Kennedy established a principle that is now widely accepted in the circuits: A firearm may play a role in the offense simply by emboldening the defendant to act; the defendant need not have drawn his weapon or fired rounds. *Stewart*, 779 F.2d at 540; *see also United States v. Williams*, 923 F.2d 1397, 1403 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2033, 114 L.Ed.2d 118 (1991); *United States v. Brown*, 915 F.2d 219, 224 (6th Cir.1990); *United States v. Vasquez*, 909 F.2d 235, 239 (7th Cir.1990); *United States v. Eaton*, 890 F.2d 511, 512 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990); *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989); *United States v. Meggett*, 875 F.2d 24, 28 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989). This principle shapes our definition of section 924(c)(1)'s use or carry element. We hold that a firearm may be considered available for purposes of section 924(c)(1) if its physical proximity to the defendant at any time during the commission of the crime, or during arrest, supports the inference that it emboldened him to commit the underlying offense or to resist arrest. Whether such an inference is legitimately raised will depend on the circumstances of the individual case. We therefore decline to quantify the test in terms of feet, yards or miles.

■ We now turn to the facts of this case. The police discovered Torres-Medina's handgun in a crawl space beneath his house, lying alongside the cocaine and other drug paraphernalia. If Torres-Medina were not handicapped and unable to access the narrow passage leading to the cavity, this would be an easy case, since a gun stored below a house where drug dealing occurs certainly is "available" in the sense just described. The question presented is whether Torres-Medina's inability *personally* to access the gun prevents his conviction.

We see no such bar to his conviction. We believe a rational trier of fact could conclude that Torres-Medina's confederates assisted him in retrieving both the cocaine and gun when it became necessary. This inference arises in part as a matter of logic. The evidence showed that the gun belonged to Torres-Medina, and it is relatively intuitive that the gun could not have been placed in the crawl space by him personally, owing to his disability. Someone must have placed it there for him. A reasonable secondary inference is that Torres-Medina also had assistance in removing the gun from its hiding place. Apart from the logic of the situation, Manuel Estrada testified that he assisted Torres-Medina during drug deals, when Torres-Medina was physically incapable of performing certain tasks on his own. The jury reasonably could have surmised that Estrada's duties extended to retrieving the gun and cocaine. We hold that, under the circumstances, there was evidence from which a reasonable jury could conclude that the nine millimeter handgun was available to Torres-Medina, for there can be little doubt that the gun, producible at his beck and call, emboldened him in the commission of his crime.

AFFIRMED.