**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eduardo PEREZ, Defendant–Appellant.**

**No. 92–50191.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1993.

Decided April 6, 1993.

---

John J. Byrne, Asst. U.S. Atty., Criminal Div., Los Angeles, CA, for plaintiff-appellee.

Marcia J. Brewer, Los Angeles, CA, for defendant-appellant.

Before: WALLACE, Chief Judge, SNEED and HALL, Circuit Judges.

SNEED, Circuit Judge:

Eduardo Perez ("Perez") timely appeals his conviction of carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). Perez contends the dis-

trict court incorrectly instructed the jury on the elements of section 924(c). We affirm.

## I.

## FACTS AND PRIOR PROCEEDINGS

On August 6, 1991, Detective Clifford Morgan of the Boise, Idaho Police Department, acting under the name of Ian Scott, was introduced by telephone to Rafael Avila, a defendant in this action. Detective Morgan and Avila discussed the purchase of kilograms of cocaine by Morgan. In preparation for the deal, Avila was to send samples of the cocaine to Detective Morgan.

After the samples were sent, Detective Morgan flew to Los Angeles and met with Avila at the Mission Hills Post Office parking lot ("post office") regarding the multi-kilogram sale. At this meeting, Avila made a call from a pay phone and spoke with a person in Spanish. After the call, Avila told Morgan that "they" wanted him (Avila) to go over to "their" house to talk about the deal. Avila then drove to the codefendant Juan Anguiano's house and picked up Anguiano.

Avila and Anguiano returned to the post office. Avila exited the pick-up truck and again met with detective Morgan. Avila stated "He just don't want to bring the five [kilograms of cocaine] but the way he want to do it is he gonna bring three." Morgan pointed to Anguiano, who was still seated in the pick-up truck and asked "Is that him?" Avila said "Yes, that's him."

Avila and Anguiano left the post office and drove to 12827 Woodcock Avenue in Sylmar, California ("the Woodcock residence"). They entered and remained inside for about 15–30 minutes. They left together and drove to Avila's house, also located in Sylmar, where Avila entered and Anguiano remained in the truck. Upon Avila's return to the truck, they drove to Anguiano's house and both went inside. Avila and Anguiano left Anguiano's home and returned to the Woodcock residence where both entered. About 45 minutes later, Avila left alone and drove back to Anguiano's home.

A short time later, defendants, Perez and Ernesto Segura–Gallegos, arrived in a van and pulled into the driveway of Anguiano's home. Soon thereafter, Avila left Anguiano's residence carrying a brown paper bag. He looked towards the van, appeared to speak to Perez and Segura–Gallegos and then entered the pick-up truck and drove to the post office with the van following closely behind during the entire trip.

No more than two hours had elapsed from the time Avila and Anguiano left Detective Morgan at the post office to the time Avila returned. Thus, while the record does not clearly indicate the distances between the Woodcock residence and the houses of Avila and Anguiano, it is reasonable to assume they were not great in any case.

When Avila, Perez, and Segura–Gallegos arrived at the post office, Avila told Detective Morgan that he had brought only one kilogram, which he showed to Morgan. After seeing the cocaine, Morgan gave a signal to other officers.

At this time, Perez and Segura–Gallegos were arrested. Detective Ruperto Sanchez of the Los Angeles Police Department approached the van and assisted in taking Perez and Segura–Gallegos into custody. Detective Sanchez identified Perez as the driver of the van. Detective Sanchez searched the van and found an automatic weapon located behind the driver's seat in a pouch connected to the seat. Sanchez testified that the gun was within Perez's reach as he sat in the driver's seat.

A postal inspector involved in the arrest testified that he advised Perez of his *Miranda* rights and then interviewed him. Perez told the inspector that he had lived at Anguiano's residence for about two years but had recently moved. On the day of the arrest, Perez had been at the residence doing some yard work. The inspector testified that Perez told him he knew a drug deal was going to take place that day and that cocaine was going to be sold at the post office. He drove the van to the post office in order to act as a lookout. When

he arrived at the post office, he got out of the van and walked towards the building. On the way back to the van, Perez looked for hazards, risks, and police. He said he did not see any and was about to get into the van and put the vehicle in reverse when he was arrested.

Perez was convicted of one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and one count of carrying a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c). He was sentenced to a total of 120 months' incarceration and four years' supervised release. Perez has appealed his conviction under 18 U.S.C. § 924(c) contending the district court erred in defining the terms "relation to" and "carrying" under the statute.

## II.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo. *United States v. Johnson,* 956 F.2d 197, 199 (9th Cir.1992). A district court's formation of a jury instruction is reviewed for abuse of discretion. *Id.* The instructions should be viewed as a whole in the context of the entire trial to determine if they were misleading or inadequate to guide the jury's deliberation. *United States v. Wood,* 943 F.2d 1048, 1052 (9th Cir.1991).

## III.

## DISCUSSION

The district court gave the following instructions relating to 18 U.S.C. § 924(c)(1):

*Instruction No. 35*

Count III charges the defendant Rafael Avila with a violation of Section 924(c) of Title 18. Count IV charges defendants Eduardo Perez and Ernesto Segura with a violation of this section. This section provides in pertinent part:

Whoever, during and in relation to any ... drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm shall be guilty of an offense against the United States.

*Instruction No. 36*

In order for ... a defendant to be found guilty of the charges in Counts III or IV, the Government must prove each of the following elements beyond a reasonable doubt:

First, that defendants committed a drug-trafficking crime as charged in Counts I or II of the indictment; and Second, that the defendants knowingly used or carried a firearm in relation to this drug-trafficking crime.

*Instruction No. 38*

"Carrying" under this statute is shown when the firearm is within reach during the commission of the narcotics offense. The term "relation to" for the purposes of a violation of Title 18, Section 924(c) requires a causal connection between the narcotics offense and the firearm.

You may find a defendant guilty of violating Section 924(c) if you find beyond a reasonable doubt that a defendant is guilty of either Count I or Count II, or both, and you find beyond a reasonable doubt that the defendant knowingly carried a firearm during and in relation to the crime charged in Counts I and/or II.

*Instruction No. 17*

An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake or accident. The government is not required to prove that the defendant knew that his acts or omissions were unlawful. You may consider evidence of the defendant's words, acts or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

## A. *Definition of "relation to"*

■ Perez contends the district court erred in refusing to give his modified instruction which stated that "relation to" under the statute "requires *more than mere possession of a firearm, there must be some* causal connection between the narcotics offense and the firearm." (Emphasis added). We disagree.

■ The district court's instruction that "relation to" requires a causal connection between the narcotics offense and the firearm is a correct statement of the law. *United States v. Power,* 881 F.2d 733, 736 (9th Cir.1989); *United States v. Ramos,* 861 F.2d 228, 230 (9th Cir.1988) ("in relation to" connotes a causal connection between the narcotics felonies and the firearm). Moreover, neither the prosecution nor the defendant is entitled to any particular language requested in a proposed jury instruction. *United States v. Powell,* 955 F.2d 1206, 1210 (9th Cir.1991). Thus, the district court did not err in declining to add Perez's proposed language to the instruction.

## B. *Definition of "carrying"*

■ Perez contends the district court, by stating that "carrying" under 18 U.S.C. § 924(c) is shown when the firearm is within reach during the commission of the narcotics offense, misled the jury as to the element of carrying. He maintains the instruction improperly required the jury to infer that the carrying element had been proven because the testimony of Officer Miller established that the gun was within Perez's reach at the time he was arrested.

■ To satisfy the element of carrying, the Ninth Circuit requires that the weapon be available. *United States v. Torres–Medina,* 935 F.2d 1047, 1049 (9th Cir.1991) (that defendant was a paraplegic incapable of retrieving gun found in crawl space under his house did not preclude finding that gun was available). In defining available, the *Torres–Medina* court stated "a firearm may be considered available for the purposes of section 924(c)(1) if its physical proximity to the defendant at any time during the commission of the crime, or during arrest, supports the inference that it emboldened him to commit the underlying offense or to resist arrest." *Id.* at 1049–50. The court stated that whether such an inference is legitimately raised depends on the circumstances of each case, and thus declined to define the test of "carrying" in terms of "feet, yards or miles." *Id.*

The test formulated in *Torres–Medina* calls for the trier of fact to decide whether the proximity of the gun to the defendant supports the inference that it "emboldened him to commit the underlying offense." The *Torres–Medina* court noted that in the typical case, "the firearm is found nearby the defendant, *raising a strong inference that he used or carried it." Id.* at 1049 n. 1 (emphasis added). In the instant case, however, the district court instructed the jury that carrying is shown *conclusively* when the firearm is in reach. Thus, the court misstated the element of carrying as defined in *Torres–Medina.*

### 1. *Harmless Error*

■ We now turn to the issue of whether the district court's error in defining carrying was harmless. In reviewing jury instructions for harmless error, the Ninth Circuit has adopted the analysis set forth by Justice Scalia in his concurrence in *Carella v. California,* 491 U.S. 263, 267–73, 109 S.Ct. 2419, 2421–24, 105 L.Ed.2d 218 (1989), and later refined in *Yates v. Evatt,* — U.S. ——, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), *disapproved of on other grounds in Estelle v. McGuire,* — U.S. ——, —— n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385 (1991). *United States v. Gaudin,* 986 F.2d 1267, 1273 (9th Cir.1993).

■ This analysis requires that we first identify the evidence the jury reasonably considered under the instructions given by the court on the pertinent issue in reaching its verdict. *Yates,* — U.S. at ——, 111 S.Ct. at 1893; *Gaudin,* 986 F.2d at 1273. We must then determine whether the evidence considered by the jury in accordance with the instructions is so overwhelming there is no reasonable doubt as to the ver-

dict rendered. *Yates,* —— U.S. at ——-——, 111 S.Ct. at 1893–94; *Gaudin,* 986 F.2d at 1273.

Here, the court stated in Instruction No. 38 that "carrying" is shown when the firearm is within reach during the commission of a narcotics offense, and that the jury could find Perez guilty under section 924(c) if it found beyond a reasonable doubt that he knowingly carried the firearm during and in relation to the offense. The court also instructed that an act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident and stated that the jury could consider evidence of the defendant's words, acts, or omissions, along with all the other evidence in deciding whether the defendant acted knowingly.

Thus, in finding that Perez knowingly carried a firearm during and in relation to the underlying narcotics offense, the jury would reasonably have considered evidence that (1) Perez was the driver of the van which followed Avila to the post office; (2) at the time of arrest, a gun was found in a pouch connected to the back of the van's driver's seat; (3) the gun was in Perez's reach as he sat in the driver's seat; (4) Perez admitted he had been at Anguiano's house on the day of the deal and knew cocaine was going to be sold at the post office that day; and (5) Perez admitted that he followed Avila to the post office for the purpose of acting as a "lookout" during the drug transaction.

This evidence overwhelmingly establishes that the firearm was available under *Torres–Medina,* and leaves no reasonable doubt as to the verdict rendered. Unlike the situations in *Yates* and *Gaudin,* the instructions in this case did not remove any relevant evidence from the jury's consideration. Therefore, we conclude that the district court's error was harmless.

AFFIRMED.