10 F.3d 809
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Arlington PRATT, Defendant-Appellant.
 No. 92-50318.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1993.
Decided Nov. 26, 1993.
 
 Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Thomas A. Pratt appeals from his jury trial conviction for possession with intent to distribute cocaine base and cocaine, in violation of 21 U.S.C. Sec. 841(a)(1); use of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c); and possession of a firearm by a felon, in violation of 18 U.S.C. Sec. 922(g)(1). We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 3
 Thomas Pratt is currently serving a 180 month sentence after a jury convicted him of possession with intent to distribute drugs, use of a firearm in relation to drug trafficking, and possession of a firearm by a felon, in violation of federal statutes.
 
 
 4
 In October 1991, several police officers arrested Pratt in his home, pursuant to a valid arrest warrant for witness intimidation. The warrant was based on alleged threats made to a victim of kidnapping and torture. (Hennigan Decl., GER, p. 2). At the time of his arrest, Pratt lived in a converted garage that consisted of one small room and a bathroom.
 
 
 5
 Officer Hennigan entered the room first and found Pratt sitting on the bed with his girl friend. (RT 1/27/92, p. 63). Hennigan asked Pratt to leave the room. Officer Ruegg handcuffed him and took him to a police car. (RT 1/27/92, pp. 107-09). Pratt's girl friend also left the room and was handcuffed. Hennigan then looked around the room to be sure no one else was there before he put away his gun.
 
 
 6
 Because Hennigan knew that Pratt was a gang member with a reputation as a "shooter" and thought that Pratt might be armed, he looked around the room for guns. (RT 1/27/92, p. 98). He noticed a television located approximately fifteen feet away from the bed where Pratt had been sitting. On top of the television, he saw to clear plastic baggies containing a white powdery substance that he believed to be cocaine. (RT 1/27/92, pp. 70-71). He also saw a microwave and some razor blades near the plastic baggies. (RT 3/11/92, pp. 126, 128). He did not see any crime evidence on the bed. What happened next was a matter of dispute in the district court. According to Hennigan, he looked at a recliner chair located next to the bed and noticed a plate protruding from under the side. On top of the partially-exposed plate, he saw a third clear plastic baggie that contained a substance that appeared to be rock cocaine. (RT 1/27/92, pp. 71-77). He moved the chair slightly so as not to disturb any potential evidence on the plate. (RT 1/27/92, p. 77). According to Hennigan, he would not have lifted the chair if the plate with the baggies had not been protruding. (RT 1/27/92, p. 83). According to Pratt, by contrast, the plate was not protruding, because he had placed it under the middle of the chair. (RT 1/30/92, p. 10).
 
 
 7
 Under the chair, Hennigan found more rock-like substances in a black film container, three loaded semiautomatic handguns, and two boxes of ammunition. (RT 1/27/93, p. 83; RT 3/11/92, pp. 129-30, 134). Hennigan's entire search lasted five minutes. (RT 1/27/92, p. 71).
 
 
 8
 Pratt filed a pre-trial motion to suppress the seized evidence. The district court held a two-day hearing in which Hennigan and Pratt testified as described above. Finding that Hennigan's credibility had been damaged by Pratt's testimony, (RT 1/30/92 pp. 19, 30), the court concluded that the evidence under the chair was not in plain view. (RT 1/30/92, p. 32). Pratt's counsel conceded that the cocaine on top of the television was in plain view, (RT 1/30/92, p. 22), and the court found that this evidence was validly seized under the plain view doctrine.
 
 
 9
 The court also expressed willingness to admit all of the evidence, not just the cocaine on top of the television, based on the search incident to arrest doctrine. "I'm also ... prepared to hold that a search specifically for guns in this circumstance, even if it hadn't been plain view[,] ... would have been lawful." (RT 1/30/92, p. 115). "They were dealing with somebody that they had reason to believe might be armed and dangerous." (RT 1/30/92, p. 122). "[T]hey had a right to search for guns in connection with the arrest." (RT 1/30/92, p. 116). Accordingly, the court denied Pratt's motion to suppress the seized evidence.
 
 
 10
 At trial, the jury convicted Pratt. Pratt unsuccessfully moved for a judgment of acquittal and for a new trial, in the alternative. Pratt appeals the denial of his motion to suppress and his motion for judgment of acquittal.
 
 ANALYSIS
 
 11
 1. Denial of Pratt's Motion to Suppress Evidence
 
 
 12
 Pratt contends that the district court erred by denying his motion to suppress evidence seized from his home after his arrest. We review de novo the district court's denial of Pratt's motion to suppress. United States v. Khan, 993 F.2d 1368, 1375 (9th Cir.1993) (citation omitted). However, we accept the district court's factual findings absent clear error. United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992) (citation omitted).
 
 A. Search Incident to Arrest
 
 13
 A police officer who makes a lawful, custodial arrest may conduct a contemporaneous, warrantless search incident to that arrest. Chimel v. California, 395 U.S. 752, 763 (1968). When, as in this case, the arrestee is removed from the area to be searched, the search is valid if: (1) the item to be searched is within the arrestee's custody and control at the time of arrest; and (2) events after the arrest and before the search do not make the search unreasonable. United States v. Tarazon, 989 F.2d 1045, 1051 (9th Cir.1993) (upholding a desk search for cocaine where the search occurred moments after arrest and where the arrestees had been placed on the floor near the desk), cert. denied, --- S.Ct. ----, 62 U.S.L.W. 3247 (U.S. Oct. 4, 1993) (No. 92-9135); United States v. Turner, 926 F.2d 883, 888 (9th Cir.), cert. denied, 112 S.Ct. 103 (1991) (upholding search of a bed and seizure of drug baggies soon after officers arrested and handcuffed the defendant and took him to another room).
 
 
 14
 To decide whether the items to be searched are within the arrestee's control at the time of arrest, we identify the area within which he might grab a weapon or destructible evidence of the crime. Chimel, 395 U.S. at 763 ("There is no ... justification for routinely searching any room other than that in which an arrest occurs....") (emphasis added). In this case, the so-called "grabbing area" included the entire room where Pratt's arrest occurred. The parties do not dispute that Pratt's room was small. Officer Hennigan took only five minutes to search it completely. With this evidence before it, the district court found that the seizure of the drugs and the guns was justified incident to Pratt's arrest, and in so doing, implicitly found that the evidence was within Pratt's grabbing area. Pratt has not shown this finding to have been clearly erroneous.[1]
 
 
 15
 Also, we agree with the district court that events between Pratt's arrest and the room search did not make the search unreasonable. As long as only a short delay occurs between arrest and search, and the arrestee is not far removed from the searched area, an officer may remove the arrestee from the room of arrest before searching it. Turner, 926 F.2d at 888, n. 2 (court limiting its holding). Here, the district court found that Officer Hennigan had Pratt handcuffed and removed to a police car outside and searched the room for a total of five minutes. The court also found that the arresting officers had reason to believe that Pratt was armed and dangerous: they knew that Pratt was a gang member with a reputation as a "shooter," and that Pratt had a prior conviction for possession of a gun, and that his arrest was for witness intimidation. To conduct his search, it was therefore not unreasonable for Officer Hennigan to remove Pratt from the room where he might have access to guns. As the court explained, the arresting officers should not "have to keep the guy standing in his domain in order to keep the right to make a search that seems to me an entirely responsible search." (RT 1/30/92, p. 32).
 
 
 16
 We reject Pratt's challenges to the district court's ruling. First, Pratt cites Turner and Maryland v. Buie, 494 U.S. 325 (1990), for the proposition that the search incident to arrest is justified only when arresting officers fear their own safety. Because Officer Hennigan had handcuffed Pratt, removed Pratt's girlfriend, and confirmed that the room was unoccupied, Pratt contends that no facts justified the search. (Appellant Opening Brief, 13-15). We respond that the district court expressly, and not clearly erroneously, found that the officers reasonably believed that Pratt was armed and dangerous and might have guns in the room. It is irrelevant that Pratt was handcuffed and outside of the room. See Turner, 926 F.2d at 888 (defendant handcuffed and taken into another room). We also note that officers may validly search for destructible evidence, not just guns, incident to an arrest. Chimel, 365 U.S. at 763.
 
 
 17
 Second, Pratt contends that the district court incorrectly based its ruling on the nature of the charged crime, witness intimidation. (Appellant Opening Brief, pp. 15-16). In fact, the district court applied Turner and the search incident to arrest doctrine; it relied on the crime charged only to support finding that the arresting officers had reason to believe Pratt might be armed and dangerous. (See RT 1/30/92, pp. 38-39).
 
 
 18
 Because the search incident to Pratt's arrest was valid, the officers were entitled to seize the drugs and guns that they found. An officer may seize, without a warrant, anything he finds during the search, if he has probable cause to believe that it is evidence of a crime. Warden v. Hayden, 387 U.S. 294, 307 (1967) (requiring a nexus between the item to be seized and criminal behavior).
 
 B. Plain View Doctrine
 
 19
 Because we conclude that the drugs and guns were validly seized incident to Pratt's lawful arrest, there is no need for us to engage in an in-depth consideration of Pratt's contention that the plain view doctrine does not justify the seizure of evidence from his home. We note, in any event, that the government does not appear to contest the district court's finding that the evidence under the chair was not in plain view. We also note that Pratt conceded at the suppression hearing that the powder cocaine on top of the television was in plain view. Thus, Pratt's challenge to the seizure of the latter piece of evidence must fail. See United States v. Winslow, 962 F.2d 845, 849 (1992) (new issues generally cannot be raised on appeal).
 
 
 20
 2. Sufficiency of the Evidence to Sustain Pratt's Conviction Under 18 U.S.C. Sec. 924(c)
 
 
 21
 The district court denied Pratt's motion for judgment of acquittal and his motion for a new trial, in the alternative. On appeal, Pratt contends that there was insufficient evidence to convict him of use of a firearm in relation to drug trafficking, in violation of 18 U.S.C. Sec. 924(c). There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis added). "[C]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.) (citation omitted), cert. denied, 113 S.Ct. 258 (1992). However, mere suspicion or speculation is insufficient. United States v. Stauffer, 922 F.2d 508, 514 (9th Cir.1990).
 
 
 22
 To convict a defendant for violating 18 U.S.C. Sec. 924(c), "the government must prove beyond a reasonable doubt [that] the defendant: (1) knowingly used or carried a firearm ... (2) during and in relation to a drug trafficking crime." United States v. Martinez, 967 F.2d 1343, 1346 (9th Cir.1992) (citation omitted). Possession of drugs with intent to distribute, conviction for which Pratt does not appeal, is a drug trafficking crime for purposes of 18 U.S.C. Sec. 924(c). United States v. Contreras, 895 F.2d 1241, 1244 (9th Cir.1990).
 
 
 23
 The parties dispute whether there was sufficient evidence that Pratt "used or carried" a firearm "in relation to" drug trafficking within the meaning of Sec. 924(c). To "use or carry" a firearm requires that the firearm be "within the possession or control" or "available to" the defendant. United States v. Torres-Medina, 935 F.2d 1047, 1049 (9th Cir.1985). "[A] firearm may be considered available ..., if its physical proximity to the defendant at any time during the commission of the crime, or during arrest, supports the inference that it emboldened [the defendant] to commit the underlying [drugs] offense or to resist arrest." Id. at 1050 (emphasis added) (upholding conviction of physically handicapped defendant based on gun and drugs found in crawl space under his house). Pratt contends that the guns which were found did not "embolden" him, because a witness who often dealt with Pratt never remarked about gun use by Pratt. (Appellant Opening Brief, 23). Pratt's contention is irrelevant, because to violate Sec. 924(c), a defendant need not ever actually display or brandish a firearm. United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991). Possession of a firearm in a location where it can be used to further a drug crime is sufficient. United States v. Garcia, 997 F.2d 1273, 1284 (9th Cir.1993).
 
 
 24
 Section 924(c) also requires that the firearm be used "in relation to" drug trafficking. The nexus exists "[i]f the firearm is within the possession or control of a person who commits a [drug trafficking] crime ... [and] the firearm facilitated or had a role in the crime...." United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985). Close proximity of a firearm to drugs suggests strongly that the possession of the weapon is related to the drug trafficking crime. Torres-Medina, 935 F.2d at 1049. Furthermore, a jury reasonably may infer that an armed possessor of drugs has more in mind than personal use and is using the firearm to facilitate his drug trafficking. United States v. Power, 881 F.2d 733, 736 (9th Cir.1989). The jury heard that Officer Hennigan found three loaded guns under a chair, near where Pratt was sitting in his small room, and next to rock cocaine, as well as evidence that drug dealers, such as Pratt, typically possess firearms. This evidence was sufficient to prove a nexus between Pratt's drug trafficking and using a firearm. See, e.g., United States v. Walker, 993 F.2d 196, 200 (9th Cir.1993) (close proximity between the defendant, a loaded gun in the living room of his apartment, and drugs in the kitchen), cert. denied, --- S.Ct. ----, 62 U.S.L.W. 3252 (U.S. Oct. 4, 1993) (No. 93-5662); Martinez, 967 F.2d at 1346 (9th Cir.1992) (firearm and cocaine in same room).
 
 
 25
 We therefore find sufficient evidence in the record for a rational juror to conclude beyond a reasonable doubt that the three guns found in Pratt's room were available to him and related to his possession of drugs with intent to distribute.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Pratt suggests that Turner requires that where a search incident to arrest takes place after the arrestee has been led from the room, and where the arrestee was found on a bed, the search must be confined to the bed and the area under the bed. We do not read Turner so mechanically. As long as the evidence which is seized falls within the arrestee's grabbing area, the first prong of Turner is satisfied