26 F.3d 133
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Morgan CODY, Defendant-Appellant.
 No. 91-50692.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 8, 1993.
Decided June 6, 1994.
 
 Before: JUDGES TANG, D.W. NELSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Defendant-Appellant Morgan James Cody, (aka James Joseph Boyle), was to receive $1,500 for selling over $200,000 of cocaine. Cody's illegal activities, however, led to his arrest. Cody was tried for his drug trafficking activities and other related crimes. At trial, he raised a duress defense, alleging that he had been forced to sell the drugs to protect his mother's and his wife's lives. A jury convicted Cody on all counts set forth in the indictment. Cody was sentenced to two mandatory life terms without the possibility of parole, two fifteen year terms to be served concurrently to the life sentences, and twenty-five years to be served consecutively to the other terms. After trial, Cody made a motion for a new trial in which he alleged that the prosecution had violated its duty to disclose exculpatory information. Cody appeals the district court's decision to deny that motion. He also maintains that there was insufficient evidence to convict him on one of the two charges of use of a firearm in relation to a drug trafficking crime. Finally, he asks this court to consider the constitutionality of a mandatory life sentence. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742, and we affirm.
 
 FACTUAL BACKGROUND
 
 3
 On February 28, 1991, DEA agents Michael Mitchell and Ramona Sanchez arrested Cody and co-defendant Mohammad Reza Mohases after observing the two men engage in a drug deal involving 5 kg. of cocaine. The officers also seized a Sig-Sauer pistol that Cody possessed. Cody waived his Miranda rights and fully cooperated with the agents. He told the agents that he possessed another 5 kg. of cocaine, which he had left in his motel room. Cody also told the agents that he was working for a Colombian drug dealer named Rene Romillo and that he was to receive $1,500 for distributing the entire 10 kg.
 
 
 4
 Cody consented to a search of his motel room and gave Agents Sanchez and Mitchell the key to the room. In Cody's motel room, the agents found the other 5 kg. of cocaine and a gym bag containing a Beretta pistol.
 
 
 5
 At trial, Cody raised a duress defense which was corroborated only by his mother's testimony. According to Cody, he was forced into the drug deal to protect his mother and his wife from Romillo's death threats. In support of his duress defense, Cody maintained that his friend Mohases received 4 kg. of cocaine from Romillo but never paid Romillo. Because Cody had introduced the two men while in prison, Romillo allegedly held Cody responsible for Mohases' failure to pay Romillo and, thus, expected Cody to assist him in recovering his money. Cody testified that Mohases had told him that Romillo had threatened to kill Mohases' son unless Romillo received his money. [R.T. at 99]. Cody also testified that he had been personally threatened by Romillo and his men and that someone had threatened to kill his mother unless Romillo received his money. Finally, Cody testified that Miami Colombian type people often resort to violence when someone doesn't pay up. [Appellant's Supplemental Excerpts of Record ("A.S.E.R.") at 133-34].
 
 
 6
 After the reported threats had been made, Romillo allegedly told Cody that he was willing to forget the money he had lost in his transaction with Mohases provided that Cody, assisted by Mohases, sell 10 kg. of cocaine for him. Cody testified that, at Romillo's request, he obtained a gun, the Sig-Sauer pistol, from his employer. [A.S.E.R. at 144]. Cody also testified that on the morning of the arrest, Rene's men delivered to his house two packages, each containing 5 kg. of cocaine and a gym bag containing a Beretta pistol, allegedly for Mohases' use. [A.S.E.R. at 144, 152]. Cody told Agents Sanchez and Mitchell that Romillo instructed him to give the Beretta to Mohases, but that Cody had forgotten the gun in his motel room.
 
 
 7
 After the trial, Cody learned that Mohases, when interviewed by the prosecutor before trial, told the prosecutor that Romillo had threatened him in connection with the 4 kg. transaction.
 
 DISCUSSION
 
 8
 I. THE DISTRICT COURT DID NOT ERR IN FINDING THAT THE GOVERNMENT DID NOT COMMIT A BRADY VIOLATION
 
 
 9
 Cody contends that the district court erred in finding that the government committed no Brady violations. According to Cody, under Brady v. Maryland, 373 U.S. 83 (1963), the government had a duty to disclose two items to the defense: (1) that Romillo was a government informant either in this case or in previous, non-related cases, and (2) that Mohases, when interviewed by the prosecutor before trial, had admitted to the prosecution that Romillo had threatened him in connection with a prior drug deal.
 
 
 10
 The district court's finding that there was no Brady violation is reviewed de novo. See United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991), cert. denied, 112 S.Ct. 947 (1992).
 
 
 11
 In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Brady, 373 U.S. at 87. Viewed retrospectively, evidence is said to be material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985). Suppression by the prosecution of such evidence requires reversal. United States v. Lehman, 792 F.2d 899, 901 (9th Cir.), cert. denied, 479 U.S. 868 (1986).
 
 
 12
 (1) Romillo's status as an informant
 
 
 13
 Cody argues that under Roviaro v. United States 353 U.S. 53 (1957), he had a right to know that Romillo was or had been a government informant. According to Cody, Romillo's status as an informant would have enabled defense counsel to raise an entrapment defense.
 
 
 14
 The record, however, lacks sufficient evidence to suggest that Romillo was ever an informant. At the hearing, the prosecutor stated that Agent Sanchez had told him that "Rene Romillo was never an informant for the government in this case" and that "neither before the defendant's arrest nor after the defendant's arrest, ha[d] Rene Romillo ever provided any assistance to the government in connection with this case." [A.S.E.R. at 212, 215]. The prosecutor proffered Sanchez' testimony twice during the hearing. Cody's attorney, however, repeatedly accepted the prosecutor's factual allegations as true and declined to call Sanchez as a witness. Therefore, Cody's argument, that the failure to reveal Romillo's status as an informant constitutes a Brady violation, misconstrues the facts and, for that reason, is without merit.
 
 
 15
 (2) Mohases' Statements to the Prosecution
 
 
 16
 Cody maintains that the government committed a Brady violation when it did not inform defense counsel of Mohases' admission to the prosecutor that Mohases had been threatened by Romillo and his men in connection with a prior drug deal when he failed to pay the money. Cody argues that Mohases' admission constitutes materially exculpatory information because Mohases' statement, that Romillo had threatened him, would have corroborated Cody's and his mother's factual allegations that Romillo had threatened them. Moreover, Mohases' admission would have increased Cody's credibility as it corroborated, at least in part, Cody's rendering of the facts and would have substantiated Cody's claim that use of threats of this kind was common practice among Colombian drug dealers such as Romillo.
 
 
 17
 The record, however, strongly supports the government's contention that the evidence in question was not material to Cody's guilt or punishment. The only reason that Mohases' admission is even slightly exculpatory is that his testimony would have shown that Cody had told the truth in at least one, however small, part of his testimony which may have rendered Cody a more credible witness. The threats against Mohases, however, were not part of Cody's duress defense and thus Mohases' admission would not have corroborated Cody's defense.
 
 
 18
 Mohases' corroborating testimony is not any more significant than any other testimony Cody used to persuade the jury that he was a credible witness, such as the testimony of Charlie Michaels, for example, who verified Cody's contention that, while in prison, he had planned to open a drug rehabilitation center for children. [R.T. 7/30/91: 52-53, 56-57; Appellee's Brief at 11, n. 9]. Although "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence," Napue v. Illinois, 360 U.S. 264, 269 (1959), in the context of this case, the jury's determination that Cody did not act under duress did not require that the jury disbelieve Cody's entire testimony, but rather only those parts of his testimony that would have established a duress defense. Mohases' admission, that Romillo had threatened him in connection with a prior drug deal, does not directly support the duress defense. Because the evidence that the prosecution failed to disclose, at best, would have had a marginal effect on Cody's general credibility, it was not materially exculpatory and, therefore, does not constitute ground for reversal. See Bagley, 473 U.S. at 682; Lehman, 792 F.2d at 901.
 
 
 19
 II. WAS IT PLAIN ERROR FOR THE JURY TO CONVICT CODY ON COUNT FIVE OF THE INDICTMENT?
 
 
 20
 Cody maintains that there was insufficient evidence to support his conviction on count five of his indictment, which charged him with using a Beretta pistol in relation to his possession with intent to distribute the 5 kg. of cocaine in violation of 18 U.S.C. Sec. 924(c)(1). In his reply brief, however, Cody implicitly concedes that his trial attorney failed to move for a judgment of acquittal at the close of his case.
 
 
 21
 Under United States v. Kuball, 976 F.2d 529, 531 (9th Cir.1992), the defense's failure to move for a judgment of acquittal constitutes a waiver of the claim of insufficient evidence. See also United States v. Comerford, 857 F.2d 1323, 1324 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). In Comerford, the court held that "[i]n this circuit, however, we may review the denial of a nonrenewed motion for acquittal, but 'only to prevent a manifest miscarriage of justice' or for plain error." Id. at 1324 (citation omitted); see also Kuball 976 F.2d at 531.
 
 
 22
 In reviewing the sufficiency of the evidence, we should reverse the jury's verdict "only if, viewing all the evidence in the light most favorable to the government, we determine that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." U.S. v. Martinez, 967 F.2d 1343, 1345 (9th Cir.1992) (citing Jackson v. Virginia, 443 U.S. 307, 329, 99 S.Ct. 2781, 2789 (1979)). Moreover, because the government must prove that the defendant committed a crime beyond a reasonable doubt, the evidence is insufficient if it "is entirely consistent with a number of reasonable explanations other than" guilt. United States v. Bishop, 959 F.2d 820, 830 (9th Cir.1992) (emphasis in the original).
 
 
 23
 Pursuant to 18 U.S.C. Sec. 924(c)(1),
 
 
 24
 [w]hoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years.
 
 
 25
 In count five of the indictment, the government charged Cody with using a Beretta pistol in relation to his possession with intent to distribute more than 5 kg. of cocaine. [Excerpts of Record ("E.R.") at 8]. Possession with intent to distribute cocaine is prohibited conduct under 21 U.S.C. Sec. 841(a)(1) and constitutes a transaction for purposes of 18 U.S.C. Sec. 924(c)(1)). See United States v. Torres-Medina, 935 F.2d 1047, 1048 (9th Cir.1991).
 
 
 26
 In Torres-Medina, the court held that under 18 U.S.C. Sec. 924(c), the government must establish: (1) "that the firearm at issue was 'related to' or played some role in, the underlying crime," 935 F.2d at 1048; and (2) "that the defendant ... 'used' or 'carried' the firearm." Id. at 1049 (citing United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985)).
 
 
 27
 The government established that the Beretta pistol was "related to" the possession with intent to distribute the 5 kg. of cocaine. This court has held that, "close proximity of the handgun to the drugs strongly suggest[s] that it [is] 'related' to the narcotics operation." Torres-Medina, 935 F.2d at 1049 (citing United States v. Hadfield, 918 F.2d 987, 998 (1st Cir.1990)); see also Martinez, 967 F.2d at 1346. In the present case, the arresting officers found in Cody's motel room both the Beretta pistol in a gym bag next to the bed and 5 kg. of cocaine. Because the drugs and the pistol were found in close proximity, there was sufficient evidence for the jury reasonably to conclude that the Beretta was "related to" the 5 kg. of cocaine found in the motel room.
 
 
 28
 Under Torres-Medina, 935 F.2d at 1049, the second element that the government was required to establish was that Cody used or carried the Beretta pistol in connection with the drug trafficking offense which, in this case, was possession with intent to distribute. In U.S. v. Bruce, 939 F.2d 1053 (D.C.Cir.1991), also involving a conviction under Sec. 924(c) and an underlying drug offense of possession with intent to distribute, the court explained that,
 
 
 29
 [s]ince possession with intent subsequently to distribute is in a sense a passive crime, it becomes somewhat difficult analytically to determine how one goes about using a gun in relation to that crime. It is important to note, however, that Congress did not make it a crime to possess a gun with the intent to use it in relation to a drug trafficking crime. Instead, Sec. 924(c) only makes it a crime to use a gun in relation to a drug trafficking crime.
 
 
 30
 Id. at 1055 (emphasis in the original).
 
 
 31
 In Bruce, although both the drugs and the gun were found in defendant's closet in a coat pocket, the court reversed the firearm conviction. The Bruce court reasoned that a conviction for use of a firearm in relation to the possession of illegal drugs with intent to distribute requires that the evidence show beyond a reasonable doubt that the defendant's purpose for having the gun is "to protect the drugs that would subsequently be distributed." 939 F.2d at 1056 (emphasis added). However, where the evidence establishes only "that the gun was to be used to protect the defendant at the time of distribution," it cannot be said that "the gun is used in relation to the possession of the drugs, regardless of the defendant's intention to distribute the drugs subsequently." Id. (emphasis in the original). The court in Bruce explained that "[t]o hold otherwise would be virtually to make possession [of the firearm] a synonym for 'use'." Id. Finally, the Bruce court concluded that "the evidence established only that the gun was intended to be used for defendant's protection at the time and place of subsequent distribution." Id. at 1056.
 
 
 32
 When Agents Sanchez and Mitchell found the Beretta and the drugs in the empty motel room, both the 5 kg. of drugs and the Beretta pistol had been left unattended. The government charged Cody with two separate counts of use of a firearm in relation to a drug related crime, specifically counts three and five. Therefore, the government had the burden of proving all the elements of the crime for each unit of prosecution. More specifically, to convict Cody of both offenses, the government had to prove (1) that, at some point in time, Cody was in the motel room with only 5 kg. of cocaine and the Beretta pistol, and (2) that, subsequently, he was outside the motel room with the other 5 kg. of cocaine and the Sig-Sauer pistol.[1]
 
 
 33
 Cody concedes that, at the time of arrest, he was in possession of 5 kg. of cocaine and the Sig-Sauer pistol, but maintains that there was insufficient evidence to show that he ever was in possession of only the other 5 kg. of cocaine and the Beretta pistol.
 
 
 34
 Because we review the evidence only for plain error, we must reject Cody's contention. As the government pointed out at oral argument, the jury could have concluded that before Cody left his motel room he had left one half of the cocaine and the Sig-Sauer pistol in his car and had been in his room with the Beretta and only the other half of the drugs.
 
 
 35
 Cody argues that, because this was not the government's theory of the case at trial, the government's suggestion that the jury could have reached this conclusion on its own, is unreasonable. Cody, however, has failed to show that the jury could not have come to this conclusion and, therefore, has not met the heavy burden of proving that his conviction on count five constituted plain error. Accordingly, we affirm Cody's conviction.
 
 
 36
 IV. IS A MANDATORY LIFE SENTENCE WITHOUT POSSIBILITY OF RELEASE UNCONSTITUTIONAL IN THIS CASE?
 
 
 37
 The last issue Cody raises on appeal is the constitutionality of a mandatory life sentence without possibility of parole as provided under 21 U.S.C. Sec. 841(b)(1)(A). Cody argues that a mechanical sentencing system violates the due process clause of the Fifth Amendment and constitutes cruel and unusual punishment under the Eighth Amendment. Cody acknowledges that this Court in United States v. Van Winrow, 951 F.2d 1069 (9th Cir.1991) and the Supreme Court in Harmelin v. Michigan, 501 U.S. 57 (1991), have held that the "Eighth Amendment does not require individualized sentencing for sentences other than death." Van Winrow 951 F.2d at 1071 (affirming the 22 year old defendant's sentence of life without possibility of parole despite the fact that defendant was not a "drug kingpin").
 
 
 38
 Under binding Supreme Court precedent, we are precluded from reversing Cody's sentence on this ground.
 
 CONCLUSION
 
 39
 For the reasons stated above, the convictions and the sentences are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 It would not have been enough for the government to show that Cody intended to return to the motel room after completing the first drug sale. At most, such a finding would have established that Cody intended to use the Beretta to protect the drugs once he would have returned to the motel room. However, "Congress did not make it a crime to possess a gun with intent to use it in relation to a drug trafficking crime. Instead, Sec. 924(c) only makes it a crime to use a gun in relation to drug trafficking crime." Bruce, 939 F.2d at 1055. Moreover, under Ninth Circuit law, the jury could not have convicted Cody under a "constructive use" theory, whereby Cody "constructively" used the gun because he "constructively" possessed the drugs and the gun was found in close proximity to the drugs. See Torres-Medina, 935 F.2d at 1049, n. 2 (declining "to tie the use or carry analysis of section 924(c)(1) to principles of constructive possession in the narcotics realm")