67 F.3d 309
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mario Alfonso ARAUJO-MEJIA, Defendant-Appellant.
 No. 93-10671.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 17, 1995.*
Decided Sept. 25, 1995.
 
 Before: FLETCHER, POOLE, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Mario Araujo-Mejia appeals from his jury conviction on charges of narcotics possession and use of a firearm in relation thereto. We affirm in part and reverse in part.
 
 
 3
 * Araujo-Mejia first contends that the district court erred in denying his motion to suppress evidence found pursuant to a search of 2954 South Kolb, in Tucson, Arizona.[1] In particular, Araujo-Mejia suggests that the affidavit upon which the search warrant was premised contained false statements and that, absent such statements, the affidavit was insufficient to establish probable cause. See Franks v. Delaware, 438 U.S. 154 (1978) (defendant can challenge facially valid affidavit by making a substantial showing that (1) the affidavit contains intentionally or recklessly false statements; and (2) absent such statements, the affidavit cannot support a finding of probable cause).
 
 
 4
 In support of his argument, Araujo-Mejia first points to Detective Gamber's statement that Lopez was not "working off charges." All parties now agree that this assertion was false. However, Gamber's testimony at the pretrial motions hearing suggests that at the time he swore out his affidavit, he was unaware of Lopez' status. In light of his lack of knowledge, we are not persuaded that Gamber intended to mislead; nor does Araujo-Mejia suggest that Gamber was reckless in failing to know of Lopez' status. Ultimately, Gamber's statement, although false, appears to have been the product of simple negligence. "Allegations of negligence or innocent mistake are insufficient" to mandate an evidentiary hearing. Franks, 438 U.S. at 171.
 
 
 5
 Araujo-Mejia next contends that Detective Gamber's statement that he had previously used Lopez was a recklessly made falsehood. Araujo-Mejia's contention is without merit. In swearing out his affidavit, Gamber stated that Lopez had been used within the last eight months; however, Gamber qualified this assertion by adding "I wasn't a part of that investigation."
 
 
 6
 Araujo-Mejia next challenges Detective Gamber's statement that he had contacted Araujo-Mejia by phone to negotiate a drug transaction. A review of Gamber's affidavit reveals that Gamber never expressly stated that he had negotiated with Araujo-Mejia, however. Gamber stated only that "the phone number that we used to contact [Araujo-Mejia], who we did all the negotiations with, returns to that address." (Emphasis added). It could be inferred from such a statement that Gamber had himself negotiated with Araujo-Mejia. However, it is equally plausible to assume that Gamber used the term "we" to refer more generally to the agents involved in the operation. Again, Araujo-Mejia has failed to demonstrate that Gamber's assertion was anything more than negligent phrasing.
 
 
 7
 Araujo-Mejia's final contention is that Gamber misled the judge by suggesting that Detective Dhaemers had used Lopez within the last sixteen months. At the pretrial motions hearing, Detective Dhaemers testified that he had used Lopez within the last eight months. Such testimony makes evident that Gamber did not mislead Judge Tinney.
 
 
 8
 Araujo-Mejia has failed to satisfy the threshold requirement of Franks--he has not made a substantial showing that Detective Gamber's affidavit contained intentionally or recklessly-made falsehoods. The district court did not err in denying his motion to suppress.
 
 II
 
 9
 Araujo-Mejia next argues that the district court erred in denying his motion for judgment of acquittal with respect to the fourth count of the indictment, charging him with a violation of 18 U.S.C. Sec. 924(c)(1)--using and carrying a firearm during and in relation to a drug trafficking offense.
 
 
 10
 There is sufficient evidence to uphold a conviction where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Torres-Medina, 935 F.2d 1047, 1048 (9th Cir.1991) (citations and quotations omitted). Section 924(c)(1) contains two elements: (1) that the firearm at issue was related to the underlying offense;[2] and (2) that the defendant "used" or "carried" the firearm. Id. at 1048-49.
 
 
 11
 As regards the first element, we conclude that the prosecution provided sufficient evidence concerning the location of the guns such that the jury could infer that they were used "in relation" to narcotics trafficking. Detective Dhaemers testified at trial that the weapons were found in a closet at 8680 East Pomegranate, the same residence in which the narcotics were discovered. This court has held that "the close proximity of the [firearm] to the drugs strongly suggest[s] that it was 'related' to the narcotics operation." Id. at 1049.
 
 
 12
 We are not persuaded, however, that the evidence proffered was sufficient to demonstrate that Araujo-Mejia "used" the weapon in relation to the underlying crime. We recognize that this court has interpreted broadly the meaning of "used" within the context of section 924(c)(1). See, e.g., United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985) ("If the firearm is within the possession or control of a person who commits an underlying crime ... and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others ... there is a violation of the statute."). That said, we are nonetheless convinced that no evidence was presented at trial to indicate that the weapons found at 8680 East Pomegranate were used by Araujo-Mejia during the commission of the underlying offenses.
 
 
 13
 A review of the trial record indicates that neither side presented evidence that Araujo-Mejia owned or resided in the house in which the weapons were found, nor that he owned the weapons themselves. Nor was there evidence indicating that Araujo-Mejia had ever used the weapons, or that he had ever used or possessed any type of weapon during his drug transactions. Cf. United States v. Warner, 10 F.3d 1236, 1239 (6th Cir.1993) (evidence sufficient to support finding that defendant "used and carried" weapon where witness testified that defendant had carried similar weapon), cert. denied, 114 S.Ct. 2176 (1994). Nor did any witness testify that the types of weapons found at 8680 East Pomegranate were weapons unique to the drug trafficking trade, or even that drug traffickers usually possess weapons to help them in their trade. Cf. United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991) (upholding 924(c)(1) conviction where DEA agent testified at trial that "most drug dealers have guns to protect the contraband"). Nor was this a case in which the weapon was found near the defendant, such that the jury could infer that the defendant used it. See Torres-Medina, 935 F.2d at 1049 n. 1. Ultimately, the only evidence presented to indicate a nexus between Araujo-Mejia and the weapons was the fact that Araujo-Mejia picked up drugs at the Pomegranate address. No evidence was offered by either side to suggest that the weapons were present at the time of Araujo-Mejia's visit, however.
 
 
 14
 Although this court has broadly construed the meaning of "use" in the context of section 924(c)(1), in each such case the prosecution has presented at least some evidence connecting the defendant to the weapon alleged to have emboldened him.[3] There is no such evidence here.
 
 
 15
 AFFIRMED in part and REVERSED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Araujo-Mejia also seeks to suppress evidence found pursuant to a search of 8680 East Pomegranate. As Araujo-Mejia did not move to exclude such evidence before the district court, he has waived this claim. See Fed.R.Crim.P. 12(f); United States v. Miller, 984 F.2d 1028, 1032 (9th Cir.), cert. denied, 114 S.Ct. 258 (1993)
 
 
 [2]
 Here, the jury found Araujo-Mejia guilty of "using and carrying firearms ... in relation to a drug trafficking crime, to wit: possession with intent to distribute marijuana and cocaine." The underlying offenses are thus Counts II and III, possession with intent to distribute marijuana and possession with intent to distribute cocaine
 For this reason, the government's contention that "Pinkerton liability can be the basis for a conviction under 18 U.S.C. Sec. 924(c)" is misplaced. It is true that "a conviction under 924(c)(1) may be maintained under a conspiracy theory." United States v. Johnson, 886 F.2d 1120, 1123 (9th Cir.1989), cert. denied, Washington v. United States, 494 U.S. 1089 (1990). Here, however, Araujo-Mejia's conviction for the use of a firearm was not based on his participation in the conspiracy.
 
 
 [3]
 Indeed, evidence of such nexus distinguishes United States v. Torres-Medina, 935 F.2d 1047 (9th Cir.1991)--upon which the government relies--from the instant case. In Torres-Medina, the defendant, a paraplegic, was arrested at home. Police discovered the defendant's handgun in a crawl-space beneath the house. At trial, the defendant's sister testified that she had told police that the handgun belonged to the defendant. Additionally, an agent testified that the weapon was used to protect the narcotics operation, and an associate of the defendant testified that he had seen the defendant fire a pistol. The court reasoned that
 the evidence showed that the gun belonged to [the defendant], and it is relatively intuitive that the gun could not have been placed in the crawl space by him personally, owing to his disability.... A reasonable secondary inference is that [the defendant] also had assistance in removing the gun from its hiding place.
 Id. at 1050. Accordingly, the court concluded, "there can be little doubt that the gun, producible at [the defendant's] beck and call, emboldened him in the commission of his crime." Id. Here, in contrast, there was no testimony that the weapons were or had ever been in either the possession or control of Araujo-Mejia.