236 P.3d 897 (2010)
STATE of Washington, Respondent,
v.
Phillip Van ATKINS, Appellant.
No. 64975-2-I.
Court of Appeals of Washington, Division 1.
May 24, 2010.
Publication Ordered July 19, 2010.
*899 Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
Douglas P. Ruth, Lewis Co. Pros. Ofc., Chehalis, WA, for Respondent.
COX, J.
¶ 1 Phillip Atkins appeals his judgment and sentence, claiming that the information and "to convict" instruction for his felony harassment charge were deficient because they did not include an essential element of that crime. Because "true threat" is not an essential element of this charge and the court's instructions included an explanation of that term, we reject this claim.
¶ 2 Atkins also argues that the knowledge instruction for third degree assault given in this case created an unconstitutional mandatory presumption. We agree, but conclude that error was harmless beyond a reasonable doubt.
¶ 3 Atkins also claims that the State did not meet its burden to prove his criminal history for purposes of calculating his offender score at sentencing. We accept the State's concession of this point and remand for resentencing to correct that error.
¶ 4 Atkins claims that certain of his convictions listed in the judgment and sentence have "washed out" under the SRA. But we do not reach that claim because the record is inadequate to do so.
¶ 5 Finally, he claims that certain 2008 amendments to the SRA violate his right to due process and the privilege against self-incrimination under the Fifth and Fourteenth Amendments. We decline to address those claims because they are not adequately briefed and it is unclear that the trial court applied the amendments at issue to Atkins.
¶ 6 We affirm in part, reverse in part, and remand.
¶ 7 Arthur Steele went camping with his wife and some friends at a campsite in Lewis County on the last weekend of August 2008. Atkins was camping near the same site with friends and family that weekend. Steele testified at trial that he had known Atkins for a little over a year and described their relationship as being acquaintances or "decent friends."
¶ 8 The Steeles stopped to talk with Atkins on the morning of Sunday, August 31, as they left to go horse-riding. During that conversation, Amy Steele noticed that Atkins had a handgun and holster underneath his coat. That evening, Atkins came over to the Steeles' campsite. Atkins was drinking beer and at some point "grabbed [Arthur Steele] like he wanted to wrestle." Though the scuffle did not escalate into a physical fight, Atkins "stood there screaming he was going to kill" Steele. Atkins repeatedly told Steele, "you're a dead mother f____er" and said he would kill Steele. Atkins threatened to kill Steele "[c]lose to a dozen times" before leaving the Steeles' campsite.
¶ 9 Less than an hour later, Atkins walked back near the Steeles' campsite, called Arthur Steele by name, and warned him, "don't go to sleep, mother f____er, you're a dead man. I'm going to f____ing kill you."
¶ 10 After this second encounter, Amy Steele drove from the campsite to a location where she could get cell phone reception and called the police. Two Lewis County Sheriff's Deputies responded around 9:55 p.m. that night. The deputies talked to Steele and others at his campsite and then drove over to Atkins' campsite.
¶ 11 Atkins and his father were inside a horse trailer when the deputies arrived. Atkins disputes whether the deputies announced that they were from the sheriff's office. But it is undisputed that the deputies pounded on the side of the trailer and ordered him to come out. Atkins' father came out of the trailer first. Atkins eventually came to the doorway. During the encounter that followed, Atkins struck Deputy Jason Mauermann in the face with a cowboy boot.
¶ 12 The State charged Atkins with one count of felony harassment based on his *900 threats to kill Arthur Steele. It also charged Atkins with one count of assault in the third degree based on his striking Deputy Mauermann in the face during the encounter at the trailer. A jury convicted Atkins as charged.
¶ 13 Atkins appeals.

TRUE THREAT
¶ 14 Atkins contends that a "true threat" is an essential element of the crime of felony harassment and, as such, must be included in the charging information and defined in the "to convict" instruction. Binding precedent indicates otherwise.
¶ 15 "Because threats are a form of pure speech, a statute criminalizing threatening language `must be interpreted with the commands of the First Amendment clearly in mind.'"[1] Consistent with this requirement, Washington courts interpret statutes criminalizing threatening language as proscribing only true threats, which are not protected by the First Amendment.[2] A "true threat" is a "`statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'"[3]
¶ 16 State v. Tellez[4] is dispositive. In construing the analogous felony telephone harassment statute, RCW 9.61.230(2)(b), this division agreed with the State that "the constitutional concept of `true threat' merely defines and limits the scope of the essential threat element in the felony telephone harassment statute and is not itself an essential element of the crime."[5] Consequently, the "true threat" requirement need not be included in the charging document or the "to convict" instruction.[6] An instruction defining "true threat" protects the defendant's First Amendment rights.[7]
¶ 17 In State v. Schaler,[8] Division Three of this court agreed with the conclusion in Tellez. Examining the same statute at issue here, RCW 9A.46.020, that court concluded that "jury instructions given at trial, by not providing a definition of `true threat,' were deficient."[9]
¶ 18 Atkins has failed to provide any contrary authority to the above cases, and we have found none.
¶ 19 Here, the "to convict" instruction required the jury to find the following elements to convict Atkins of the crime of felony harassment:
(1) That on or about August 31, 2008, the defendant knowingly threatened to kill Arthur Steele immediately or in the future.
(2) That the words or conduct of the defendant placed Arthur Steele in reasonable fear that the threat to kill would be carried out;
(3) That the defendant acted without lawful authority; and
(4) That the threat was made or received in the State of Washington.[10]
Instruction 12 defined "threat":
Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person.
To be a threat, a statement or act must occur in a context of under such circumstances where a reasonable person, in the position of the speaker, would foresee that *901 the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.[11]
As in Tellez, this definitional instruction was sufficient to protect Atkins' First Amendment rights. It ensured that the jury would convict Atkins only if it deemed his threat toward Steele a "true threat."
¶ 20 Because "true threat" is not an element of the crime of third degree assault and that term was explained in one of the jury instructions in this case, there was no error.

JURY INSTRUCTIONS
¶ 21 Atkins argues that the knowledge instruction for the third degree assault charge in this case created a "mandatory presumption" and relieved the State of its burden to prove the elements of that charge. We agree. But we also conclude that the error was harmless beyond a reasonable doubt.
¶ 22 It is reversible error to instruct the jury in a manner that relieves the State of its burden to prove beyond a reasonable doubt every essential element of a criminal offense.[12] We analyze a challenged jury instruction by considering the instructions as a whole and reading the challenged portions in context.[13] We review an alleged error in jury instructions de novo.[14]
¶ 23 "In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the `to convict' instruction."[15]
¶ 24 "A mandatory presumption is one that requires the jury `to find a presumed fact from a proven fact.'"[16] To determine whether a jury instruction creates a mandatory presumption, we examine whether a reasonable juror would interpret the presumption as mandatory.[17] Mandatory presumptions violate a defendant's right to due process if they relieve the State of its obligation to prove all of the elements of the crime charged beyond a reasonable doubt.[18]
¶ 25 A mandatory presumption is different from a permissive presumption, which does not require the trier of fact "`to infer the elemental fact from proof by the prosecutor of the basic one'" and "`places no burden of any kind on the defendant.'"[19] "A permissive presumption merely allows an inference to be drawn and is constitutional so long as the inference would not be irrational."[20]
¶ 26 Even if a jury instruction includes an unconstitutional mandatory presumption, it does not necessarily require reversal.[21] Such an erroneous instruction is subject to harmless error analysis.[22] Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless beyond a reasonable doubt.[23] In Yates v. Evatt,[24] the United *902 States Supreme Court set forth a special constitutional harmless error test where mandatory presumptions in jury instructions are at issue.[25]
¶ 27 In State v. Goble,[26] Division Two of this court held that a jury instruction defining knowledge, which was based on former WPIC 10.02, created a mandatory presumption.[27] There, two police officers encountered Goble and his grandson in a bar parking lot.[28] The officers testified at trial that the grandson "ran `aggressively' toward [them], screaming obscenities and threats."[29] As the officers began handcuffing the grandson, Goble grabbed one of the officers by the neck.[30] The State charged Goble with third degree assault.[31] Goble testified that he thought the officer was a member of a nearby crowd and he grabbed the man in an attempt to protect his grandson.[32]
¶ 28 The jury instructions included a definition of when a person "knows or acts knowingly or with knowledge."[33] During deliberations, the jury asked for clarification of this instruction.[34] The "to convict" instruction for third degree assault required the State to prove "That the defendant knew at the time of the assault that [the victim] was a law enforcement officer . . . who was performing his or her official duties."[35] The jury found Goble guilty of third degree assault.[36]
¶ 29 Goble appealed, arguing that the knowledge instruction relieved the State of its burden to prove that Goble knew the victim was a police officer.[37] The court reversed his conviction, holding that the jury instruction on knowledge was "confusing, misleading, and a misstatement of the law."[38] The court further held that because the instruction "allowed the jury to presume Goble knew [the officer's] status at the time of the incident if it found Goble had intentionally assaulted [the officer]," the instruction "conflated the intent and knowledge elements required under the to-convict instruction into a single element and relieved the State of its burden of proving that Goble knew [the officer's] status if it found the assault was intentional."[39] The court also concluded that the error was not harmless, "given the conflicting evidence," and reversed Goble's conviction.[40]
¶ 30 Here, the trial court gave the same knowledge instruction at issue in Goble.[41] Instruction 9 provided:
A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are *903 described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.

Acting knowingly or with knowledge also is established if a person acts intentionally.[42]
¶ 31 The "to convict" instruction for third-degree assault, Instruction 7, required the jury to find the following elements to convict Atkins:
(1) That on or about the 31st day of August, 2008, the defendant assaulted Deputy Mauermann;
(2) That at the time of the assault, Deputy Mauermann was a law enforcement officer who was performing his official duties; and
(3) That the defendant knew at the time of the assault that Deputy Mauermann was a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties; and
(4) That the acts occurred in Lewis County, Washington.[43]
¶ 32 Instruction 10, defining assault, provided:
An assault is an intentional touching or striking of another person that is harmful or offensive. . . .[44]
¶ 33 The State did not except to any of these jury instructions. Accordingly, they became the law of the case.[45] Thus, as in Goble,[46] the State was required to prove that Atkins knew of the officer's status at the time of the assault. This is so although our supreme court has held that such proof is not required as an element of third degree assault.[47]
¶ 34 Because the last sentence of Instruction 9 is identical to the knowledge instruction in Goble and the "to convict" instruction requires two mens rea elements, the State "acknowledges" that Goble supports the conclusion that Instruction 9 was legally incorrect in this case.[48]
¶ 35 Here, as in Goble, the instructions allowed the jury to presume Atkins knew the officer's status at the time of the incident if it found Atkins had intentionally assaulted the officer.[49] The instruction therefore relieved the State of its burden of proving Atkins knew the officer's status if it found the assault was intentional.[50] Moreover, the instruction created a mandatory presumption because a reasonable juror reading the instruction would conclude that knowledge of the officer's status is presumed from proof of intent to assault the officer. The remaining question is whether the giving of this legally incorrect instruction was harmless beyond a reasonable doubt.
¶ 36 Atkins argues that the error is not harmless based on the Supreme Court's Yates test for mandatory presumption instructions. In response, the State argues that the error was harmless under the Yates standard.
¶ 37 In Goble, the court concluded that the instructional error was not harmless "given the conflicting evidence."[51] But the court neither discussed its analysis in reaching that conclusion nor did it cite Yates.
¶ 38 In State v. Hayward,[52] another panel of Division Two was faced with what it concluded was a mandatory presumption instruction for an essential element of a crime.[53] The issue in that case involved instructions *904 analogous to Goble, but dealt with the mens rea of recklessness rather than knowledge.[54] In discussing whether the error was harmless, that panel applied the general constitutional harmless error test.[55] The court relied on the principle that "In cases involving `omissions or misstatements of elements in jury instructions, the error is harmless if that element is supported by uncontroverted evidence.'"[56] In doing so, the court acknowledged Yates, but chose not to apply its test because the error was not harmless under the more general harmless error test.[57]
¶ 39 We conclude that Yates dictates application of its special test in the case of mandatory presumptions in jury instructions.[58] There, the Supreme Court cited the harmless error test from Chapman v. California,[59] which is "whether it appears `beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"[60] It then explained that when a jury instruction includes an unconstitutional presumption, "a reviewing court can hardly infer that the jurors failed to consider it," given the "sound presumption of appellate practice" that "jurors are reasonable and generally follow the instructions they are given."[61]
¶ 40 In order to address the special circumstance of mandatory presumptions in jury instructions, the court set forth a particular harmless error test. This analysis requires that the reviewing court first identify the evidence the jury reasonably considered under the instructions given by the court on the pertinent issue in reaching its verdict.[62] The court must then determine whether the evidence considered by the jury in accordance with the instructions is so overwhelming that there is no reasonable doubt as to the verdict rendered.[63]
¶ 41 Applying Yates here, we first "must ask what evidence the jury actually considered."[64] Instruction 9, the erroneous instruction defining knowledge, gave jurors three alternatives:
A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.
Acting knowingly or with knowledge also is established if a person acts intentionally.[65]
These alternative ways to find knowledge indicate that the jury was not limited to considering the mandatory presumption created by the third sentence of the instruction. Significantly, the jury heard conflicting evidence regarding whether the deputies identified themselves as officers prior to and during the encounter at the trailer. Atkins argues that a reasonable juror could have acquitted him "by deciding that he was ignorant of Deputy Mauermann's status as a law enforcement officer performing his official duties."[66] Although he does not cite to the record to support this contention, we presume he bases it on the fact that the deputies approached the trailer at night and that *905 the lighting during the encounter prevented him from seeing that he was dealing with deputies.
¶ 42 On the other hand, there was unimpeached and undisputed evidence that the deputies orally identified themselves as officers repeatedly and loudly when they stood outside the trailer. Likewise, there was undisputed evidence that the deputies were wearing uniforms and drove a marked sheriff's car to Atkins' campsite.
¶ 43 In Yates, the record revealed some evidence rebutting malice, which "left the jury free to look beyond the unlawful act presumption and to consider all the evidence on malice."[67] Here, the conflicting evidence identified above concerning knowledge similarly supports our conclusion that the jury actually looked to evidence beyond the unlawful presumption.
¶ 44 Additionally, the court's first instruction to the jury stated,
. . .
In order to decide whether any proposition has been proved, you must consider all of the evidence that I have admitted that relates to the proposition. Each party is entitled to the benefit of all of the evidence, whether or not that party introduced it.[68]
In Yates, the court applied the presumption that the jury follows the court's instructions and did so in that case. Likewise, here, "we can . . . infer with confidence that the jury considered all the evidence tending to prove or disprove" Atkins' knowledge of Deputy Mauermann's status.[69] Thus, the first prong of the Yates test is satisfied here.
¶ 45 The second step under Yates is to "weigh the probative force" of the evidence considered by the jury "as against the probative force of the presumption standing alone."[70] Courts have applied this part of the test by examining "whether the evidence considered by the jury . . . is so overwhelming there is no reasonable doubt as to the verdict rendered."[71]
¶ 46 Here, there was overwhelming evidence by witnesses to the encounter between Atkins and the two officers that Atkins knew the status of Deputy Mauermann at the time of the assault. Both officers testified that they announced themselves as being from the Lewis County Sheriff's Office when they arrived at Atkins' campsite. Steele, standing somewhere outside of Atkins' campsite, heard the officers announce repeatedly that they were from the Lewis County Sheriff's Department. Steele's wife and Raymond Merten gave similar testimony.
¶ 47 Atkins' father, Dan, testified to a different series of events with respect to the assault. But he agreed that he woke up to the sounds of someone outside the trailer loudly saying, "Philip Atkins come out with your hands up or you're going to get tased."
¶ 48 Additionally, the jury heard evidence of an exchange between Atkins and the deputies prior to the assault. Deputy Clarence Lupo testified that after he and Deputy Mauermann made contact with Atkins at Atkins' trailer door, "Deputy Mauermann said,[`] you're under arrest.['] And Phil [Atkins] screamed back,[`] what for.['] He says,['] come out here now, I think, you're under arrest.[']"[72] Shortly after this, Atkins hit Deputy Mauermann with his boot.[73] This unrebutted evidence shows that Atkins knew the person he assaulted was a law enforcement officer.
¶ 49 Moreover, Atkins did not contest his knowledge that the person he assaulted was a law enforcement officer in closing argument. Instead, he argued that the assault either did not happen or was unintentional. Counsel briefly mentioned the limited lighting during the encounter. But counsel did not challenge the evidence that multiple witnesses *906 heard the officers loudly identifying themselves as officers prior to the assault.
¶ 50 In sum, we conclude that the second prong of the Yates test is satisfied: the evidence considered by the jury was so overwhelming that there is no reasonable doubt as to the verdict.[74] The instructional error was harmless beyond a reasonable doubt.
The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.
¶ 62 We affirm in part, reverse in part, and remand for further proceedings.
WE CONCUR: LAU and APPELWICK, JJ.
NOTES
[1] State v. Tellez, 141 Wash.App. 479, 482, 170 P.3d 75 (2007) (internal quotation marks omitted) (quoting State v. Williams, 144 Wash.2d 197, 207, 26 P.3d 890 (2001)).
[2] Id. (citing State v. Kilburn, 151 Wash.2d 36, 43, 84 P.3d 1215 (2004); Williams, 144 Wash.2d at 208, 26 P.3d 890; State v. J.M., 144 Wash.2d 472, 477-78, 28 P.3d 720 (2001)).
[3] Id. (internal quotation marks omitted) (quoting Kilburn, 151 Wash.2d at 43, 84 P.3d 1215).
[4] 141 Wash.App. 479, 170 P.3d 75 (2007).
[5] Id. at 483-84, 170 P.3d 75.
[6] Id.
[7] Id.
[8] 145 Wash.App. 628, 186 P.3d 1170 (2008), review granted, 165 Wash.2d 1015, 199 P.3d 411 (2009).
[9] Id. at 640, 186 P.3d 1170.
[10] Clerk's Papers at 26.
[11] Id. at 33.
[12] State v. Hayward, 152 Wash.App. 632, 641-42, 217 P.3d 354 (2009) (quoting State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995)).
[13] Id. at 642, 217 P.3d 354 (citing Pirtle, 127 Wash.2d at 656-57, 904 P.2d 245).
[14] State v. Becklin, 163 Wash.2d 519, 525, 182 P.3d 944 (2008).
[15] State v. Hickman, 135 Wash.2d 97, 102, 954 P.2d 900 (1998).
[16] Hayward, 152 Wash.App. at 642, 217 P.3d 354 (quoting State v. Deal, 128 Wash.2d 693, 699, 911 P.2d 996 (1996)).
[17] Id. (citing Deal, 128 Wash.2d at 701, 911 P.2d 996).
[18] Id.; Deal, 128 Wash.2d at 701, 911 P.2d 996.
[19] Yates v. Evatt, 500 U.S. 391, 402 n. 7, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), disapproved of on other grounds by Estelle v. McGuire, 502 U.S. 62, 72 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting Ulster County Court v. Allen, 442 U.S. 140, 157, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)).
[20] Id.
[21] See id. at 402-03, 111 S.Ct. 1884.
[22] Id.
[23] State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985).
[24] 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), disapproved of on other grounds by Estelle v. McGuire, 502 U.S. 62, 72 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).
[25] Id. at 402-04, 111 S.Ct. 1884.
[26] 131 Wash.App. 194, 126 P.3d 821 (2005).
[27] Id. at 203-04, 126 P.3d 821.
[28] Id. at 196, 126 P.3d 821.
[29] Id. at 197, 126 P.3d 821.
[30] Id.
[31] Id. at 196, 126 P.3d 821.
[32] Id. at 199, 126 P.3d 821.
[33] Id. at 202, 126 P.3d 821. Instruction 8 provided:

A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.
Acting knowingly or with knowledge also is established if a person acts intentionally.
(Emphasis omitted.)
[34] Id. at 200, 126 P.3d 821.
[35] Id. (emphasis omitted).
[36] Id.
[37] Id. at 202, 126 P.3d 821.
[38] Id.
[39] Id. at 203, 126 P.3d 821.
[40] Id. at 203-04, 126 P.3d 821.
[41] See id. at 202, 126 P.3d 821.
[42] Clerk's Papers at 30 (emphasis added).
[43] Id. at 28 (emphasis added).
[44] Id. at 31 (emphasis added).
[45] Hickman, 135 Wash.2d at 102, 954 P.2d 900.
[46] Goble, 131 Wash.App. at 202, 126 P.3d 821.
[47] State v. Brown, 140 Wash.2d 456, 470, 998 P.2d 321 (2000).
[48] Respondent's Brief at 18-19; see also State v. Gerdts, 136 Wash.App. 720, 728, 150 P.3d 627 (2007) (limiting Goble to cases where jury must find two mens rea elements). [retain]
[49] See Goble, 131 Wash.App. at 203, 126 P.3d 821.
[50] See id.
[51] Goble, 131 Wash.App. at 203-04, 126 P.3d 821.
[52] 152 Wash.App. 632, 217 P.3d 354 (2009).
[53] Id. at 645, 217 P.3d 354.
[54] Id. at 644-45, 217 P.3d 354.
[55] Id. at 646-47, 217 P.3d 354.
[56] Id. (internal quotation marks omitted) (quoting State v. Thomas, 150 Wash.2d 821, 845, 83 P.3d 970 (2004)).
[57] Id. at 647 n. 5, 217 P.3d 354.
[58] See Yates, 500 U.S. at 403-06, 111 S.Ct. 1884.
[59] 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d. 705 (1967).
[60] Yates, 500 U.S. at 403, 111 S.Ct. 1884 (quoting Chapman, 386 U.S. at 24, 87 S.Ct. 824).
[61] Id. at 403, 111 S.Ct. 1884.
[62] Id. at 403-04, 111 S.Ct. 1884.
[63] Id. at 404-06, 111 S.Ct. 1884.
[64] Id.
[65] Clerk's Papers at 30.
[66] Appellant's Opening Brief at 18.
[67] Yates, 500 U.S. at 408, 111 S.Ct. 1884.
[68] Clerk's Papers at 20.
[69] Yates, 500 U.S. at 409, 111 S.Ct. 1884.
[70] Id. at 404, 111 S.Ct. 1884.
[71] United States v. Perez, 989 F.2d 1111, 1115-16 (9th Cir.1993) (citing Yates, 500 U.S. at 404-06, 111 S.Ct. 1884).
[72] Report of Proceedings (April 23, 2009) at 127-28.
[73] Id.
[74] See Perez, 989 F.2d at 1115-16 (citing Yates, 500 U.S. at 404-06, 111 S.Ct. 1884).